**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1-06-CR-173(1) |
| | § | |
| CORNELIOUS JOSEPH GREEN | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Cornelious Joseph Green's ("Green") *pro se* Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (#81). The Government filed a response in opposition (#84). United States Probation and Pretrial Services ("Probation") reviewed the filings and recommends denying the motion. Having considered the motion, the submissions of the parties, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.     Background

On November 16, 2006, a grand jury in the Eastern District of Texas, Beaumont Division, returned a two-count Indictment against Green (#18). Green was charged in Count One of the Indictment with Felon in Possession of a Firearm and in Count with Two with Felon in Possession of Ammunition. On February 8, 2007, he pleaded guilty to both counts of the Indictment pursuant to a written plea agreement. On December 19, 2007, United States District Judge Ron Clark sentenced Green to 220 months' imprisonment at to both counts, to be served concurrently, followed by 5 years of supervised release in accordance with the terms of the plea agreement. The United States Court of Appeals for the Fifth Circuit dismissed his appeal as frivolous on November 13, 2008. Green is now housed in a Residential Reentry Center based in San Antonio, Texas. His projected release date is February 24, 2027.

In his motion for compassionate release, Green claims:

> I received an unusually long sentence, I have served at least 10 years of the term of imprisonment, and a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) would produce a gross disparity between the sentence being served and the sentence likely to be imposed on the date I filed this motion, after full consideration of my individualized circumstances. *See* § 1B1.13(b)(6).

He elaborates:

> The U.S. Sentencing Commission has changed the §5H1.1 statute regarding prior offenses committed while defendant was a youth. Such priors now warrant a downward departure at sentencing. This change applies to me. If I were sentenced today I would be eligible to a lesser sentence than I'm serving now.

Green, age 51, claims that there is a sentencing disparity between the sentence he is currently serving and the sentences of similarly situated defendants sentenced today. He further contends that if he were sentenced today, his sentence would be substantially less due to an intervening change in the law that would make him ineligible for the Armed Career Criminal enhancement under 18 U.S.C. § 924(e)'s provisions. He also avers that his post-conviction rehabilitation provides evidence that he is not a threat to the community.

II.     Compassionate Release

     A.     Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *accord Freeman v. United States*, 564 U.S. 522, 526 (2011); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the

Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which

currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

*See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this

as 'compassionate release' because courts generally use it for prisoners with severe medical

exigencies or infirmities.").

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission").  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling."  *Id*. § 1B1.13(b).

These categories are:

(1) the medical circumstances of the defendant;

(2)    the age of the defendant;[2]

(3)    the family circumstances of the defendant;

(4)    whether the defendant was a victim of abuse while in custody;

(5)    other reasons similar in gravity to those previously described; and

(6)    an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles:

(1)    the defendant must have exhausted his administrative remedies;

(2)    "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)    the reduction must be consistent with the Commission's applicable policy statements; and

(4)    the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district

---

[2] Green was 32 years old when he committed his offenses of conviction in the case at bar.

court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory"). Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468. "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025). Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *McLean*, 2022 WL 44618, at *1.

The defendant bears the burden of proving that he has exhausted his administrative remedies before filing a motion for compassionate release. *United States v. Garcia-Martinez*, No. EP-24-CR-0764-DCG-1, 2025 WL 2427619, at *2 (E.D. Tex. Aug. 18, 2025); *accord United States v. DeJean*, No. 2:18-cr-120, 2025 WL 3687269, at *3 (E.D. La. Dec. 19, 2025); *United States v. Mahaffey*, No. 17-54-DLB-MAS-1, at *2 (E.D. Ky. July 3, 2025); *United States v.*

*Escobar*, No. 15-CR-150-2 (ARR), 2024 WL 2111573, at *2 (E.D. N.Y. May 10, 2024); *United States v. Avelar*, No. 3:16-cr-0351-B-2, 2022 WL 17096173, at *2 (N.D. Tex. Nov. 20, 2022); *United States v. Singleton*, No. 14-168, 2022 WL 3576767, at *1-2 (E.D. La. Aug. 19, 2022). Without evidence that the defendant requested compassionate release from the warden and that thirty days have passed since the warden received or denied the request, the defendant fails to satisfy § 3582(c)(1)(A)'s exhaustion requirement. *Avelar*, 2022 WL 17096173, at *2 (finding the exhaustion requirement was not met where a defendant provided a copy of a letter purportedly sent to the warden but did not provide proof the warden received the letter) (citing *United States v. Knox*, No. 3:12-CR-0252-B, 2020 WL 4432852, at *2 (N.D. Tex. July 31, 2020)).

A defendant's motion for compassionate release must be based on the same circumstances as those raised in his request for release to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *United States v. York*, No. 4:07-CR-181-SDJ, 2025 WL 1397198, at *2-3 (E.D. Tex. May 14, 2025); *United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)). "It would disrupt the 'orderly system for reviewing compassionate-release applications' and 'incentivize[] line jumping' to permit defendants to present grounds for compassionate release to the Court that the BOP had not already received the opportunity to consider." *United States v. Silcox*, No. 3:17-CR-134-TAV-HBG-1,

2020 WL 4341758, at *2 (E.D. Tenn. July 28, 2020) (quoting *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020)).  Hence, the facts asserted in an inmate's request to the warden and in his motion for compassionate release must be consistent.  *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *United States v. Reeves*, No. 3:18-cr-313-B, 2020 WL 3895282, at *2 (N.D. Tex. July 10, 2020);  *United States v. Samak*, No. 91-189, 2020 WL 2473780, at *2 (E.D. La. May 13, 2020); *see Gonzalez*, 849 F. App'x at 117.

Further, "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord DeJean*, 2025 WL 3687269, at *3; *Mendoza-Garibay*, 2023 WL 307459, at *2.  "It is well-settled that the exhaustion requirement is not satisfied when the defendant previously sought administrative relief *on a different ground* than the ground presented to the district court." *DeJean*, 2025 WL 3687269, at *3.  Successive compassionate release motions must independently satisfy the exhaustion requirement.  *United States v. Ford*, No. 1:16-CR-19-HAB, 2021 WL 5980368, at *2 (N.D. Ind. Dec. 16, 2021).  "If a prisoner were only required to make one request to the BOP and forever after [be] able to file new motions asserting new grounds for relief, the purpose of the exhaustion requirement would be severely undermined." *United States v. Wardle*, No. 5:18-57-KKC, 2021 WL 4822827, at *3 (E.D. Ky. Oct. 14, 2021); *accord Rivas*, 833 F. App'x at 558; *Ford*, 2021 WL 5980368, at *2.

In this instance, the Government invokes § 3582(c)(1)(A)'s exhaustion requirement.  The Government states, "[as] a threshold matter, Green did not present those grounds [for compassionate release] to the BOP, let alone in a way that gave the BOP a chance to evaluate them

and decide whether to make a motion on his behalf." The Government, however, overlooks Green's Inmate Request for Compassionate Release to Unit Manager Lugo at FCI Bennettsville, where he was housed at the time, dated January 7, 2025, which is attached to his current motion. Green states in his request:

> I am seeking a compassionate release & sentence reduction on the grounds of a recent change in Statute 5H1.1 disqualifying my prior charges as a youth (juvenile) for sentence enhancements.

M.V. Joseph, the Warden of FCI Bennettsville, responded to Green's request on January 13, 2025, stating, in part:

> A change in the law or sentencing procedures is not an "extraordinary or compelling circumstance." A lengthy but lawful sentence is not "extraordinary or compelling," and an unlawful sentence would need to be addressed with the sentencing court, not the Bureau of Prisons. This issue would be better addressed through a petition for commutation of sentence per Program Statement 1330.15 Petition for Commutation of Sentence dated, May 4, 2014.

> Accordingly, your request is denied. If you are not satisfied with this response, you may appeal through the Administrative Remedy Program.

Green, however, makes no mention and gives no indication in his filings that he has attempted to exhaust his administrative remedies with regard to his claims based on changes to the applicability of the Armed Career Criminal Act or his rehabilitation, as there is no evidence before the court that he has sought relief from the warden or other BOP personnel on these grounds. Absent such evidence, Green cannot prevail on these claims. The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *see United States v. Harper*, No. 24-30275, 2024 WL 4664018, at *1 (5th Cir. Nov. 4, 2024) ("[B]ecause the Government properly raised the

9

rule requiring exhaustion in the district court, 'the court *must* enforce the rule.'" (quoting *Franco*, 973 F.3d at 468)); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Gomez*, No. 2:17-cr-41-KS-MTP, 2025 WL 420531, at *2 (S.D. Miss. Feb. 6, 2025) ("Congress used clear language:  all requests for compassionate release must be presented to the [BOP] before they are litigated in the federal courts."); *United States v. York*, No. 17-00086-BAJ-RLB, 2024 WL 3771442, at *3 (M.D. La. Aug. 13, 2024) (recognizing that a court may not modify a term of imprisonment if a defendant has not filed a request with the BOP); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").

Here, because Green presents no evidence that he submitted a request to the warden raising the claims he now asserts in his motion for compassionate release based on changes to the applicability of the Armed Career Criminal Act or his rehabilitation, he has not met his burden of proof to establish that he has exhausted his administrative remedies as to those claims. Therefore, due to his failure to exhaust his administrative remedies as to those claims before filing

his current motion, the court lacks the authority to grant the relief Green requests based on those grounds.

        C.        <u>Youthful Offender Claims and Length of Sentence of Imprisonment</u>

While his arguments are rather convoluted, Green appears to object to the criminal history points that were assessed against him in the Presentence Investigation Report ("PSR") prepared on April 13, 2007, and revised on September 11, 2007, for offenses he committed while he was a youth. These include a 1993 conviction for Attempted Murder which he committed at age 17, a 1993 conviction for Attempted Murder which he committed at age 18, a 1994 conviction for Retaliation which he committed at age 19, and a 1994 conviction for Voluntary Manslaughter which he committed at age 19. He was assessed 3 criminal history points for each of those offenses, resulting in a total of 12 criminal history points. Contrary to Green's assertions, these were not enhancements applied to his sentence based on his conduct during the course of his offenses of conviction, but were merely criminal history points generally assessed by the probation officer for these types of offenses irrespective of the offender's age when calculating a defendant's criminal history score. Nonetheless, Green's total criminal history score of 14 points was a factor in determining the applicable sentences for Green's offenses of conviction under the United States Sentencing Guidelines. A review of the record reveals that Probation determined that the applicable Guidelines provisions called for a sentence of 235 to 293 months' imprisonment for each of his offenses of conviction. The statutory range of imprisonment was 15 years to Life. The sentence recommended by Probation was 288 months of imprisonment. The sentence ultimately imposed by the court, however, was 220 months' imprisonment on each of his counts of conviction, to be served concurrently, followed by a 5-year term of supervised release.

Green contends that his sentence should be reduced and he should be released because he received an unusually long sentence. Section 1B1.13(b)(6) provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

A limitation on considering changes in the law is contained in 1B1.13(c) of the Guidelines, which provides:

> LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G. § 1B1.13(c).

In order to meet the requirements of the Unusually Long Sentence provision of U.S.S.G. § 1B1.13(b)(6), Green must satisfy three requirements. First, the defendant must be serving an unusually long sentence. U.S.S.G. § 1B1.13(b)(6). Although Green contends that the sentence he received is unusually long, he seems to discount the fact that it was 73 months less than the top of the Guidelines range. Second, the defendant must have served at least ten years of that sentence. *Id*. Green has fulfilled this requirement. Third, there must have been a change in the law that "produce[s] a gross disparity between the sentence being served and the sentence likely

to be imposed at the time the motion is filed." *Id.* This section explicitly excludes the consideration of non-retroactive changes "to the Guidelines Manual." *Id.* In the Fifth Circuit, controlling precedent precludes the court's consideration of non-retroactive changes in *any* law. *See Austin*, 125 F.4th at 692 ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."); *Escajeda*, 58 F.4th at 187 (holding that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence").

Here, Green points to Amendment 829 to the United States Sentencing Guidelines, that became effective on November 2024. Amendment 829, provides in part:

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.

U.S.S.G. § 5H1.1 Age (Policy Statement). He also points to a Policy Statement formerly contained in Section 5H1.1 which states that "[a]ge may be appropriate in determining whether a departure is warranted," referencing a statement that a downward departure "may be warranted due to the defendant's youthfulness at the time of offense or prior offenses."

In the case at bar, Green was 32 years of age when he committed his offenses of conviction, but he was 17, 18, and 19 years old when he committed various prior offenses for which he was assessed criminal history points. Amendment 829, the Youthful Offender Amendment, however, was not been given retroactive effect. *See* U.S.S.G. § 1B1.10(d) (listing amendments that have been given retroactive effect); *United States v. Matute-Carcamo,* No. H-19-

13

494-2, 2025 WL 1677950, at *3 (S.D. Tex. June 13, 2025). Thus, it "cannot be considered in the 'extraordinary and compelling reason' calculus." *Matute-Carcamo*, 2025 WL 1677950, at *3; *accord United States v. Dickson*, No. 3:20-CR-0250-B-1, 2026 WL 879483, at *2 (N.D. Tex. Mar. 31, 2026). Indeed, the Sentencing Guidelines expressly preclude the consideration of a non-retroactive amendment to the Guidelines Manual for the purpose of determining whether an extraordinary and compelling reason exists under the revised policy statement. *See* U.S.S.G. § 1B1.13(b)(6), (c).

Moreover, as the Government points out, the Sentencing Commission deleted the entirety of U.S.S.G. § 5H in Amendment 836, effective November 1, 2025, as being redundant with the discretion the § 3553(a) factors afford sentencing courts. *See Dickson*, 2026 WL 879483, at *2. Therefore, because U.S.S.G. § 5H is no longer in effect, its prior amendment cannot create an extraordinary and compelling reason for compassionate release/reduction in sentence. *See id.* Hence, Green's claims based on his youthfulness at the time he committed the offenses used in the calculation of his criminal history score must be rejected.

III.    Conclusion

In sum, Green has not satisfied his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. He has articulated no viable grounds for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A). Green has failed to exhaust his administrative remedies with respect to some of his claims. Therefore, in accordance with the foregoing analysis, Green's *pro se* Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (#81) is DENIED.

SIGNED at Beaumont, Texas, this 19th day of May, 2026.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE